IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Robert Earl Jones,                          )          Civil Action No. 8:13-00375-RBH-JDA
                          Plaintiff,        )
                                            )          **REPORT AND RECOMMENDATION**
                                            )          **OF MAGISTRATE JUDGE**
              vs.                           )
                                            )
Carolyn W. Colvin,                          )
Commissioner of Social Security,            )
                                            )
                          Defendant.        )

        This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]   Plaintiff brought this

action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for

disability insurance benefits ("DIB").   For the reasons set forth below, it is recommended

that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

        On July 23, 2009, Plaintiff filed an application for DIB, alleging an onset of disability

date of December 3, 2007.[2]   [R. 163-164.]   The claim was denied initially on December 31,

2009 [R. 107-110], and was denied on reconsideration by the Social Security

Administration ("the Administration") on June 21, 2010 [R. 113-115].   Plaintiff requested a

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]The record also indicates Plaintiff filed for SSI benefits [R. 178-181] and DIB benefits [R. 182-186] on May 16, 2008. These applications were denied in September 2009 and Plaintiff did not appeal. [R. 94-97.]

hearing before an administrative law judge ("ALJ") and on July 29, 2011, ALJ Walter C. Herin conducted a de novo hearing on Plaintiff's claims.  [R. 38-93.]

The ALJ issued a decision on August 25, 2011, finding Plaintiff not disabled under the Social Security Act ("the Act").  [R. 17-37.]  At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012 and had not engaged in substantial gainful activity since December 3, 2007.  [R. 22, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: diabetes with diabetic neuropathy, degenerative disc disease to the lumbar spine, degenerative joint disease, osteoarthritis, adjustment disorder with depression and anxiety, and alcohol dependency.  [R. 22, Finding 3.]  The ALJ also noted that Plaintiff had received some treatment for hypertension, hyperlipidemia and insomnia, but that these impairments were considered non-severe.  [*Id.*]  At Step 3, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 23, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found he retained

> the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that he cannot lift or carry more than 10 pounds occasionally and less than 10 pounds frequently; he cannot stand and/or walk for more than 2 hours in an 8 hour workday; he can only occasionally stoop, twist, balance, crouch, kneel, and climb stairs or ramps; he cannot crawl or climb ladders or scaffolds; he is limited to simple routine and repetitive tasks in an environment that does not involve contact with the general public or working in close proximity with coworkers; and he must use a cane, crutches, or rolling walker when ambulating.

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 28, Finding 5.]  Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant work [R. 31, Finding 6]; however,  considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the he can perform  [R. 32, Finding 10.]  Accordingly, the ALJ concluded Plaintiff has not been under a disability, as defined by the Act, from December 3, 2007, through August 25, 2011, the decision date.   [R. 32, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined.  [R. 1-7.]  Plaintiff filed this action for judicial review on February 11, 2013.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and should be remanded because the ALJ

1.  made ambiguous RFC findings with respect to Plaintiff's need for an assistive device, his ability to stoop, and his difficulties with fine manipulation skills; and Plaintiff's ability to perform sedentary work with a cane, crutches or a rolling walker  [Doc. 14 at 24–30];

2.  failed to resolve inconsistencies in the between the vocational expert's ("VE") testimony and the Dictionary of Occupation Titles ("DOT") [*id.* at 30–33]; and,

3.  failed to properly assess Plaintiff's credibility [*id.* at 33–38].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and should be upheld because the ALJ

1.  considered the entire record and complied with the requirements of Fourth Circuit precedent in *Craig v. Charter,* 76 F.3d 585 (4th Cir. 1995)*,* in assessing Plaintiff's credibility [Doc. 15 at 12–17];

2.  properly evaluated the medical evidence, opinion evidence and Plaintiff's testimony in assessing the RFC; and was adequately specific with regard to

Plaintiff's need for an assistive device, and his limited sitting and stooping [*id.* at 17–20];  and,

3.    properly relied on the VE's testimony, specifically how an assistive device would factor into "enduring sedentary work" [*id.* at 20–21].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

6

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden

shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not

9

fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's RFC[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

---

[5]RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

As previously stated, once the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

11

determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion

12

does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making

the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds

14

that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

16

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Credibility**

Plaintiff argues that the ALJ failed to explain how conditions that the ALJ found to be severe could not produce the type of symptoms alleged by Plaintiff, and failed to consider evidence supporting Plaintiff's alleged limitations. [Doc. 14 at 36–37.] Plaintiff further contends that the ALJ failed to consider any evidence in favor of Plaintiff's credibility. [*Id.* at 37.]  For the reasons stated below, the Court finds Plaintiff's allegation of error to be meritless.

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based upon a consideration of the entire case record. SSR 96–7p, 61 Fed.Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.; see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a non-exhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C. F.R. § 1529(c)(3).  If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination.  *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

### *ALJ's Analysis*

In assessing Plaintiff's credibility the ALJ indicated that he followed the required two-step process of (1) determining whether there is an underlying medically determinable physical or mental impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques, such that it could reasonably be expected to produce the claimant's pain or other symptoms; and (2) evaluating the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. [R. 29.] The ALJ specifically considered the following evidence of record:

> In a disability report, the claimant stated that he is in constant pain with knee and back pain and he gets stressed out at work (Exhibit 2E). In a disability report appeals, the claimant stated that he cannot stand for long periods, he cannot handle stress very well, and he has frequent dizzy spells (Exhibit 6E). On an activities of daily living form, the claimant stated that he is not able to

18

care for his young children. He further stated that he is unable to sleep due to severe pain. He added that it takes a long time for him to bathe or dress, he is unable to sit for long periods, he feels depressed a lot, and he does not want to be around people. He said he does not cook, and that the only household chore he can do is iron clothes. He said he has arthritis in his hands and fingers, and that they hurt and are swollen most of the time. He also said he becomes upset with people very easily. He said he may shop by mail or computer for clothes and shoes. While he alleges that he has severe mental impairments, he said he is able to pay bills, count change, and handle a bank account. When asked about hobbies, he said he watches television every day and sometimes plays cards. He said he also may go to visit his children. In addition, he said he drinks a lot. He estimated that he can walk about one fourth of a mile before he must stop and rest. He said he is able to follow written and spoken instructions "okay," but that he had problems getting along with people in his post office job and could not handle stress very well. He also said he uses a cane (Exhibit 3E). I note the claimant has completed almost 4 years of college-level work at Limestone College, with grades of mostly A's and B's, which are inconsistent with the level of impairment he alleges.

. . .

In a report of contact dated August 5, 2008, the claimant stated that he uses a cane to walk, but that it was not prescribed by a doctor. He said he can bathe and dress himself, and that he shops in stores, usually accompanied by someone else. He said he is unable to navigate stairs, and he does not do any house or yard work. He said his family does all of the cooking and most of the chores. He said he had not been back to the Veterans Administration in a while because he got mad with them when they said there was nothing wrong with him. He said he began to suffer from anxiety and depression when his physical problems began to affect his ability to do his job.

. . .

In a function report dated September 30, 2009, the claimant stated that he was living in an apartment with his father-in-law. He described a typical day as getting up and taking his medications, eating breakfast, sleeping until lunch, eating a sandwich for lunch, sleeping until the afternoon, and prepare [sic] dinner if he feels as if he is able to do so. He said he goes to school at Limestone College on Mondays, Tuesdays, and Thursdays. He said he has been given an assistive device by the Veterans Administration to help with dressing, and he was given a sidebar and showerhead so he can shower while using a shower chair. He said he does not need any special reminders to take care of personal needs and grooming; and he said he is able to

prepare simple meals such as sandwiches, french fries, hot dogs, cereal, rice, and baked chicken. He said he prepares meals 2-3 times per week. He said he also does laundry once per month, and he irons clothes while sitting down. He said he also does some household cleaning. He further stated that he leaves the house to go college, and that he sometimes drives. He further stated that he may shop in stores for food, bath products, and personal items four times per month. He said his hobbies include reading, watching television, and fishing. He explained that he reads and watches television daily, and he fishes once every 2-3 months. He said he also may play cards with others, talk, or listen to music; and he said he goes to church on Sundays if he is able. The estimated that he can walk for 15 minutes at a time before needing to stop and rest, and he needs to rest for about 10-15 minutes before continuing walking. He estimated that he can pay attention for only 20 minutes at a time. However, he said he is able to follow spoken instructions okay and that he gets along okay with authority figures. He said he must use a cane or walker to get around (Exhibit 9E).

At the hearing, the claimant testified that he lives with his wife and his children ages 3, 10, and 18. He said he has attended college courses at Limestone College in the field of business management, but that he has not yet received his college degree. He testified that he has a driver's license and that it took him approximately 30 minutes to get to the hearing. He said he may take his son to daycare and that he may go to the library 1-2 times per week. He said he is able to dress himself half of the time, but he then testified that he may need help putting on his pants or shoes. He said he also occasionally needs help bathing. However, he testified that he does not require assistance preparing a meal or grocery shopping. He said he also takes the trash out twice per week, but he said he does not do any other household or yard chores. He testified that he can prepare frozen meals in the microwave or make sandwiches when his wife is at work. He said he participated in the work-study program at the VA Medical Center, where he worked part time for payoff and on for about 6 months. He explained that he worked in the records room at the VA hospital. He said he was not required to work every day. He said he also applied for a security job at Richland Memorial Hospital in the summer of 2008, but he was not hired.  He testified that low back pain is the most severe impairment that prevents him from working, and he added that he has pain radiating down his legs to his feet. He said his next most severe impairment is anxiety. In addition, he said he has left knee pain as well as finger and elbow pain. He explained that he cannot grab or lift with the right hand. He testified that he takes medications, but they cause drowsiness. He further testified that he can sit for only 15 minutes at a time, and that he can stand for only 10 minutes at a time. He said he uses a Canadian crutch when walking. He said he cannot lift or carry more than 10 pounds. When asked about mental health treatment, the claimant testified that he sees a psychiatrist every 6 months and he is

supposed to see a counselor every 2 weeks. He said he just started going to the counselor again.

[R. 29–31.]

Upon considering the above evidence of record, the ALJ determined that Plaintiff's statements and testimony regarding his functional limitations and daily activities were not fully consistent.  [R. 31.] The ALJ explained:

> I also note that while he alleges severe mental impairments, he repeatedly declined to be prescribed medications for depression or anxiety. He told his treating psychiatrist that he preferred to only take an antihistamine to help him sleep and to receive counseling. He also did not return to counseling on a consistent basis. In addition, he indicated that he goes to the library and reads; and the evidence shows that he has attended college courses in business administration during the relevant period. The evidence shows that he attended college 3 days per week, although he claims that he cannot sit for more than 15 minutes at a time, stand for more than 10 minutes, or concentrate for more than 20 minutes. He alleges severe back pain with radiculopathy, but objective studies show only mild degenerative changes to the lumbar spine without any disc bulges, herniation, or nerve root impingement. The evidence shows that he has diabetes and diabetic peripheral neuropathy, but the evidence shows that he has not been fully compliant with treatment; and he showed improvement when he took his medications as prescribed. He alleges limitations in ability to use his hands, but the medical records do not show any significant swelling or other impairment of the hands.

[R. 31.]

### *Analysis*

Upon consideration of the ALJ's findings, the Court finds no merit in Plaintiff's argument that the ALJ was required to "make a clear finding as to whether the claimant has conditions that could cause the alleged pain or not" or that the ALJ's findings are overly ambiguous and  "indicate that [Plaintiff] does not have medical conditions that could cause his alleged symptoms, but only conditions that could justify the RFC found by the ALJ." [Doc. 14 at 35, 36.]  Contrary to Plaintiff's argument, and in accordance with regulations

21

and legal requirements for determining disability, the ALJ initially confirmed the existence of underlying medically determinable physical or mental impairments, shown by medically acceptable clinical and laboratory diagnostic techniques, which could reasonably be expected to produce the Plaintiff's pain or other symptoms.  The fact that the ALJ found Plaintiff's mental or physical impairments to be severe, does not contradict his finding that Plaintiff's credibility was lacking.   As an initial matter, it is well understood that the plaintiff's burden to show a severe impairment at Step Two is not an exacting one.  Although the regulatory language speaks in terms of "severity," a plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  SSR 85–28; *see also Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n. 1 (4th Cir.1999); *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984). In short, the Step Two inquiry "is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3d Cir.2004).  Importantly, a finding that an impairment is severe at Step Two does *not* denote a level of pain or limitation suffered by Plaintiff. Therefore, the severity and credibility analyses are appropriately separated.

Further, Plaintiff disputes the ALJ's credibility determination that Plaintiff declined prescribed medication for depression or anxiety, because Plaintiff in fact  took Lexapro for depression.  Plaintiff also takes issue with the ALJ's finding that Plaintiff was able to got to college three days per week without addressing evidence that he had difficulties in school due to problems with concentration due to pain.  [Doc. 14 at 36.]  As in the above analysis, the Court finds no error in the ALJ's decision.  Agency regulations provide that it is proper to consider factors such as the Plaintiff's medications, treatment, and "any measures you

use or have used to relieve your pain or other symptoms" in assessing a claimant's credibility.  20 C.F.R. § 404.1529(c)(3).  The record clearly indicates that Plaintiff at times declined prescription medication and opted for counseling for his mental impairment.  [*See, e.g.*, R. 447 (offered antidepressant but prefers counseling); R. 468 (offered antidepressant but prefers counseling); R. 469 (consented to take psychiatric medication hydroxzine); R. 478(offered antidepressant but prefers to use hydroxyzine and counseling); R. 491(offered medication but prefers to use hydroxzine and counseling)].  Plaintiff then began taking medication and reported some success. [R. 540 (consented to taking psychiatric medications in treatment plan but wishes to consider counseling); R. 590 (reported mild remission).] The fact that Plaintiff opted for conservative treatment, and was, by all accounts of the medical records, somewhat successful on that treatment, weighs against Plaintiff's allegations of disabling symptoms. *See Gross v. Heckler*, 785 F.2d 1163, 1165–66 (4th Cir.1986) (holding that a condition is not disabling if medication or treatment reasonably controls the symptoms); *Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir.1992) (finding conservative treatment inconsistent with an allegation of disability).  Furthermore, Plaintiff's anxiety and depression was described in the medical records as "situational" or "mildly circumstantial" on a number of occasions. [*See, e.g.*, R. 276 and R. 287.] Finally, the ALJ noted that while these mental impairments may be sufficient to case "some of the alleged symptoms," Plaintiff's statements about the "intensity, persistence and limiting effect" of these symptoms were not credible, which the Court finds is supported by substantial evidence. [*See* R. 30.]

Additionally, the ALJ was justified in considering Plaintiff's ability to attend college and do well in his courses in determining the level of mental impairment present in this

matter.  *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating a claimant's daily activities is one factor the ALJ will consider will evaluating a claimant's symptoms, including pain).  And while Plaintiff alleges difficulties in school, the record shows that, although Plaintiff complained of difficulties due to pain and depression because of financial struggles [*see*, R. 295, 423, and 460], Plaintiff was successful and made A's and B's in his college courses [R. 29].

Turning to Plaintiff's alleged back pain, Plaintiff also argues that, while objective studies show only mild degenerative changes to the lumbar spine, Plaintiff's severe back pain could be caused by other conditions.  [Doc. 14 at 37.] However, Plaintiff failed to direct the Court to any other condition that could cause Plaintiff's back pain.  Upon review, the Court notes that the record evidence indicates that on examination there were no physical abnormalities shown to support Plaintiff's complaints of chronic pain, nor were any abnormalities shown via diagnostic testing, or evidence of radiculopathy or peripheral neuropathy. [R. 600–601.]  Additionally, even if the Court were to accept Plaintiff's account of his pain, Plaintiff failed to explain why he still could not perform sedentary work with a limitation to standing or walking less than 2 hours in an 8-hour day.  As the ALJ indicated, medical evidence shows only mild degenerative changes to the lumbar spine without any disc bulges, herniation or nerve root impingement. [R. 31.]

Furthermore, progress notes from VA Medical Center dated March 2009 indicate Plaintiff's musculoskeletal exam exhibited that Plaintiff had good equal muscle mass and no atrophy noted.  [R. 375.]  With respect to Plaintiff's lumbar spine, the notes from the exam indicate that

> There are 4 lumbar vertebrae which are normal in configuration and alignment with no evidence of recent body injury or other defect.  There is no

disc disease. There is no significant spondylosis. Oblique films cannot confirm a pars defect. The pedicles are intact.

Impression: Essentially negative lumbar spine.

[*Id.*]  Additionally, during Plaintiff's consultative exam, no edema of the lower extremities was noted; Plaintiff had normal muscle bulk and tone; Plaintiff was able to tandem walk, heel walk and toe walk, but was unable to squat without instability. [R. 519.]  Notes of record do suggest that Plaintiff's need for a walker is supported by the medical evidence, as the ALJ acknowledged [R. 519, 404], because the examination showed "joints normal, normal muscle bulk, difficulty with squat, ROM intact, normal dexterity, grip 4/5, BUE 5/5, BLE 4/5, reflexes normal."  [R. 404.]   Based on the above, the Court finds the Plaintiff's allegations of error to be unpersuasive and the ALJ's credibility analysis with respect to Plaintiff's depression/anxiety and his complaints of disabling back pain to be supported by substantial evidence.

**RFC**

Plaintiff argues that the ALJ's RFC limitation directed to Plaintiff's use of a cane, crutches or rolling walker is vague.  [Doc. 14 at 25.]  Specifically, Plaintiff contends that, under SSR 96-9p, sedentary work[7] may be precluded based on the need for an assistive device and that the ALJ should have made a finding relating to Plaintiff's ability (or lack thereof) to have one hand free to lift and carry items.  [*Id.* at 25–26.]  Plaintiff also argues

---

[7]A finding that a claimant is limited to sedentary work necessarily "represents a significantly restricted range of work" and reflects the fact that the claimant has "very serious functional limitations."  SSR 96–9P, 61 Fed.Reg. at 34480.  Sedentary work normally involves at least six hours of sitting in the eight-hour workday with breaks in the morning, lunchtime, and the afternoon in approximately two hour intervals.  *Id.* at 34482.

the ALJ failed to evaluate or discuss specific evidence regarding Plaintiff's difficulties sitting and stooping. [*Id.* at 28.]    The Court disagrees.

The Administration has provided a definition of RFC and explained what an RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i .e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC....

26

*Id.* at 34,476.

To assess Plaintiff's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

### *ALJ's Analysis*

Upon review of the medical evidence, the ALJ noted that Plaintiff complained of low back pain and that he used a cane when walking, although examination on March 28, 2009, showed normal gait and station. [R. 25.] A rehabilitation note dated April 17, 2007, however, indicated Plaintiff was independent with activities of daily living but used an assistive device. [*Id.*] The ALJ noted that in November 2009 Dr. Damon Daniels of Wellspring Family Medicine ("Dr. Daniels") found that Plaintiff ambulated with a rollator walk but that Plaintiff could transfer from the walker to a chair unassisted. [R. 27.] Dr. Daniels also wrote that Plaintiff was able to tandem walk slowly, was able to walk on heels and toes, but he had difficulty squatting. [*Id.*] In assessing and applying this medical evidence, the ALJ limited Plaintiff to sedentary work allowing him to use a cane, crutches or a rolling walker when ambulating, and limited him to only occasionally stooping. [R. 28.] While the ALJ did not specifically address sitting, he did limit Plaintiff to standing 2 hours out of an 8 hour day. [*Id.*] Accordingly, sitting would generally total about 6 hours of an 8-hour day. SSR 96-9p.

### *Discussion*

27

Upon review, the Court finds Plaintiff's argument that the ALJ was required to include a finding relating to Plaintiff's ability to have one hand free to lift and carry items is without merit.   SSR 96–9p provides that:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.   For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.  For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9p (internal footnotes omitted).

In this case, while the ALJ did not find the use of an assistive device was medically required, the ALJ included the assistive device in Plaintiff's RFC and presented the Plaintiff's limitations to a VE for a determination regarding "Plaintiff's ability to make

adjustment to other work." *Id.* [*See also* 20 C.F.R. § 416.966(d), (e) (2007)(An ALJ is not restricted to the DOT in determining whether work exists in the national economy that a claimant can perform; the ALJ may also rely on vocational-expert testimony to make that determination.)].  And while the Plaintiff appears to suggest that Plaintiff suffers from other functional limitations or restrictions affecting his ability to make an adjustment to sedentary work (e.g., an inability to lift and carry items with one hand, an inability to stoop and/or an inability sit) a review of the record does not support these additional limitations.

For instance, a consultative exam performed on November 4, 2009, by Dr. Daniels found that "[o]n my exam, [Plaintiff] did have some mild deficits in his motor function in his lower extremities. However, his gross and fine manipulations in his hands were normal. Speech and language are intact and his memory was grossly intact." [R. 397]  Additionally, a physical RFC completed by Dr. Robert Heilpern on June 15, 2010, found Plaintiff was limited to occasional stooping and with no manipulative limitations (including reaching, handling (gross manipulation) and fingering (fine manipulation). [R. 519–520.]  The June 2010 physical RFC is consistent with a previous physical RFC completed by Dr. Dale Van Slooten on December 15, 2009, finding Plaintiff limited to occasional stooping and finding no manipulative limitations. [R. 405–406.]  With respect to sitting, during the November 2009 consultative exam, Plaintiff reported that "sitting in low chairs causes problems. However, if he is in a chair that is somewhat elevated he is able to sit adequately." [R. 395.] Plaintiff also testified to being able to sit for a couple hours at a time if seated in a chair like the one he sat in during the hearing. [R. 73.]    Accordingly, the Court finds the RFC is supported by substantial evidence; and the ALJ's failure to include a provision for sitting in the RFC is harmless because sitting for up to 6 hours in an 8-hour day is inherent in the

29

definition of sedentary work.  *See* SSR 96-9p(sitting would generally total about 6 hours of an 8-hour day).

Curiously, Plaintiff failed to direct the Court to any legal basis or regulation requiring the ALJ to including a finding in the RFC regarding Plaintiff's ability to hold something in one hand while ambulating with an assistive device.  The Court declines to require such a finding.  Furthermore, the Plaintiff failed to identify any evidence of record that the ALJ failed to consider in developing the Plaintiff's RFC.  Based on the above, the Court finds the ALJ's RFC is supported by substantial evidence.

**Vocational Expert**

Plaintiff argues the ALJ improperly relied on the testimony of the VE as the VE did not explain how the occupations identified by the VE could be performed by Plaintiff in light of his need to use an assistive device.  [Doc. 14 at 32–33.]  According to Plaintiff, the DOT does not address the ability to use assistive devices in the jobs cited by the VE.  [*Id.* at 32.]  Additionally, Plaintiff argues the ALJ failed to inquire as to whether there was any conflict between the VE's statement that Plaintiff could perform an extremely restricted range of sedentary, unskillled work and the DOT descriptions of this work. [*Id.*]

Pursuant to SSR 00–4p, an ALJ must elicit a reasonable explanation for any apparent unresolved conflict between the VE's evidence and the DOT before relying on the VE's testimony. *Fisher v. Barnhart*, 181 F. App'x 359, 365–66 (4th Cir.2006).  Silence in the DOT with respect to a limitation does not, however, create a conflict between the VE's testimony and the DOT.  *Cf. Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir.2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT.").  ALJ's routinely rely on the DOT in evaluating

whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).  An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefore.  *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir.2007); SSR 00–4p.  But failure to so inquire can be deemed harmless error where there is no apparent conflict.

### *ALJ's Analysis*

The Plaintiff appears to take issue with the fact that the ALJ, in determining Plaintiff's RFC, failed to specifically ask the VE whether the use of an assistive device further erodes the availability of sedentary jobs that Plaintiff can perform.  Based on the review of the record, however, the Court finds no merit in Plaintiff's argument.

In assessing Plaintiff's ability to work, the ALJ presented the VE with a hypothetical containing all of the functional limitations he found supported by the record.  *See, Torres v. Astrue*, 2009 WL 873995, *8 (D.S.C. Mar.30, 2009)( "There is, however, no requirement that a hypothetical question contain a function-by-function assessment as required when formulating an RFC. Rather, the hypothetical only needs to include all of the claimant's credible impairments.")  The ALJ provided the VE with the following hypothetical:

> For hypothetical number 2, assume the presence of an individual of the approximate age, education and past work experience as the claimant, seeking employment with the following limitations. No lifting or carrying over ten pounds occasionally, less than ten pounds frequently. No standing or walking over two hours in an eight-hour workday. No more than occasional stooping, twisting, balancing, crouching, kneeling or climbing of stairs or ramps. No crawling and no climbing of ladders, ropes or scaffolds.

[R. 86]

31

. . .

-- from hypothetical 2, I'm adding for 2A, a limitation to simple, routine and
repetitive tasks that do not require ongoing contact with the general public or
close -- or work in close proximity with co-workers as we discussed before,
and also the need for ambulation with either bilateral forearm crutches or a
rolling walker.

[R. 88.]

Based on this hypothetical, which included the need for ambulation with crutches or a

rolling walk, the VE concluded:

Well, sedentary work, Judge, is basically, in my judgment, we have, in terms
of unskilled, is approximately 22 to 25 occupational titles. Of those, part of it
would be as enduring sedentary work, the individual needs to be able to sit
approximately six hours out of an eight-hour day. Ambulation would not
necessarily be a factor in that regard.

However, based upon the public -- not being able to interact with the public
and the close with co-workers, of that 22 to 25 titles, only about 15 percent
of them, in other words anywhere, about three or four would meet that.

. . .

An example of ones that would meet that would be is what is titled as an
addressing clerk. This is an individual who operates and a machine that
typically processes advertising literature and other kinds of work,
209.587-010. South Carolina -- oh, it's SVP of 2 and it is sedentary. In South
Carolina, approximately 200, national economy, we're now at about 14,000.

Next would be is what is titled as a weight or sample tester. Again, this is an
individual that tends a machine, 539.485-010, sedentary exertion level and
SVP of 2, which is unskilled. In South Carolina, approximately 150 and in the
national economy, approximately 15,000. Arid I said, Judge, that's by
occupational title, not by number.

[R. 88-89.]

While SSR 96–9p states that the occupational base for an individual who must use

an assistive devise *may* be significantly eroded, there is no indication in this case that the

32

vocational expert's statement was erroneous. *See, Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir.2005) (finding that substantial evidence supported the ALJ's decision that the plaintiff was not disabled where the hypothetical to the vocational expert included all limitations that were supported by the record as a whole)(emphasis added).

Additionally, based on the testimony of the VE, the ALJ concluded that Plaintiff was capable of performing enduring sedentary work where the individual needs to be able to sit approximately six hours out of an eight-hour day; thus, ambulation would not necessarily be a factor. [R. 88.]  Examples of such work include, as noted by the VE, an addressing clerk and a weight or sample tester.  The ALJ also indicated that "[p]ursuant to SSR 00-04p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titled." [R. 32.]

In challenging the VE's findings, Plaintiff failed to point the Court to any apparent inconsistency between the VE's testimony and the DOT.  The VE was clearly aware of the Plaintiff's limitation to using an assistive device while working when he found that jobs were available in the economy that Plaintiff could perform.  Furthermore, neither of the DOT references sited by the VE address the use of assistive devices or indicate any apparent conflict with the Plaintiff's RFC limitations; thus, it is not apparent that the VE's testimony conflicts with the DOT.   For instance, DOT 209.587-010, *Addresser* (clerical), describes the job as requiring "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail."[8]   DOT 539.485-010, *Weight Tester* (paper & pulp), describes the job where the worker

---

[8]Available at http://www.occupationalinfo.org/20/209587010.html, (April 16, 2014) (last visited July 14, 2014).

Tends machine that records variations in weight along sample strip of paper or other material: Inserts end of sample strip into testing machine to obtain reading on graph of basic weight of sample. Turns dial to bring weight indicator to center line on graph to calibrate machine for weight of material tested. Starts feed rolls that carry sample strip through machine to record variations in weight of material on graph. Calculates percentage of variation in material weight, using formula or chart. Fills machine ink reservoir, using dropper. [9]

Upon review, the Court does not appreciate any apparent conflict between the VE's testimony and the DOT.  The Court finds the ALJ's failure to expressly ask the VE about any apparent conflicts to be harmless error.  *See, Coleman v. Astrue*, 2010 WL 3724703, *14 (DSC 2010), *citing  Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir.2007) (finding that an ALJ's failure to inquire about any conflict between VE's testimony and DOT was harmless error because there was no conflict).  Accordingly, the Court declines to remand on this basis.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

                                                    s/Jacquelyn D. Austin
July 14, 2014                                        United State Magistrate Judge
Greenville, South Carolina

---

[9]Available at http://www.occupationalinfo.org/53/539485010.html, (April 16, 2014) (last visited July 14, 2014).

34